UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ROBERT KAMAL L.,[1] | Case No. 2:18-cv-07905-JDE |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| ANDREW M. SAUL,[2] Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Robert Kamal L. filed a Complaint on September 11, 2018, seeking review of the Commissioner's denial of his application for disability insurance benefits ("DIB"). On June 6, 2019, the parties filed a Joint Stipulation ("Jt. Stip."), addressing their respective positions. The Court has

---

[1] Plaintiff's name has been partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Andrew M. Saul, now Commissioner of the Social Security Administration, is substituted as defendant for Nancy A. Berryhill. See Fed. R. Civ. P. 25(d).

taken the Joint Stipulation under submission without oral argument and as such, this matter now is ready for decision.

## I.

## BACKGROUND

On January 5, 2015, Plaintiff applied for DIB, alleging disability beginning June 30, 2013. Administrative Record ("AR") 77, 156. After his application was denied (AR 77-92), Plaintiff requested an administrative hearing, which was held on June 8, 2017. AR 47, 115. Plaintiff, represented by counsel, appeared and testified at the hearing before an Administrative Law Judge ("ALJ"), as did Heidi Paul, a vocational expert. AR 47-76.

On October 18, 2017, the ALJ issued a written decision finding Plaintiff was not disabled. AR 15-25. The ALJ found Plaintiff had not engaged in substantial gainful activity since June 30, 2013, the alleged onset date. AR 20. The ALJ determined that Plaintiff suffered from the following severe impairments: degenerative disc disease and arthritis of the lumbar spine; diabetes; sleep apnea; mild diabetic peripheral neuropathy; joint dysfunction; and obesity. Id. The ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. AR 21. The ALJ also found Plaintiff had the residual functional capacity ("RFC") to perform light work, with the following limitations: "no more than frequently performing postural activities; and no climbing ladders, ropes, or scaffolds." AR 22. The ALJ determined Plaintiff was capable of performing past relevant work as a caregiver and security guard. AR 25. Accordingly, the ALJ concluded Plaintiff was not under a "disability," as defined in the Social Security Act. Id.

Plaintiff filed a request with the Appeals Council for review of the ALJ's decision (AR 154), which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-4. This action followed.

## II.
## LEGAL STANDARDS

### A. Standard of Review

Under 42 U.S.C. § 405(g), this Court may review a decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."). However, a court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Lastly, even when the ALJ commits legal error, the Court upholds the decision where that error is harmless. Molina, 674 F.3d at 1115. An error is harmless if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

### B. Standard for Determining Disability Benefits

When the claimant's case has proceeded to consideration by an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Molina, 674 F.3d at 1110.

First, the ALJ considers whether the claimant currently works at a job that meets the criteria for "substantial gainful activity." Molina, 674 F.3d at 1110. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security Regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015) (as amended). If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from his impairments. See 20 C.F.R. § 404.1520(a)(4); Social Security Ruling 96-8p.

After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform his past relevant work, either as he "actually" performed it when he worked in the past, or as that same job is "generally" performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016). If the claimant cannot perform his past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999); 20 C.F.R.

§ 404.1560(c). If the claimant can do other work, he is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See id. at 1099.

The claimant generally bears the burden at each of steps one through four to show he is disabled, or he meets the requirements to proceed to the next step; and the claimant bears the ultimate burden to show he is disabled. See, e.g., Molina, 674 F.3d at 1110; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). However, at Step Five, the ALJ has a limited burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

## III.
## DISCUSSION

The parties present two disputed issues (Jt. Stip. at 2):

Issue No. 1: Whether the ALJ properly followed the regulations in weighing the opinion evidence in this matter; and

Issue No. 2: Whether the ALJ properly evaluated Plaintiff's subjective complaints as required by the Agency's regulations and rulings.

**A. Opinion of Dr. Michael Bazel**

Plaintiff contends that the ALJ erred by improperly rejecting the opinion of Dr. Michael Bazel, Plaintiff's treating physician, who outlined a less-than-sedentary functional capacity. Jt. Stip. at 3.

1. Applicable Law

In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citation omitted). In weighing medical source

5

opinions, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining physician's opinion is contradicted by another physician's opinion, "an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Id.

2. Analysis

Dr. Bazel began treating Plaintiff in May 2013 in conjunction with a workers' compensation claim. AR 399-416. In September 2015, Dr. Bazel completed a physical residual functional capacity questionnaire for Plaintiff's back condition. AR 485-88. He opined Plaintiff could occasionally lift or carry less than ten pounds, and could never lift or carry ten pounds or more in a workday. AR 486. He further opined Plaintiff could stand or walk less than two hours total in an eight-hour workday and could sit less than six hours in an eight-hour workday. Id. He noted Plaintiff would need a job that permitted shifting positions at will from sitting, standing, or walking and would need to take unscheduled breaks during an eight-hour workday. Id. He further opined Plaintiff's condition would cause him to be absent from work about three times a month. Id. Plaintiff's ability to push or pull was limited in the upper extremities, and he could only occasionally bend, balance, and crawl. AR 487.

The ALJ accorded this opinion "little weight," determining that "such extreme limitations [were] unexplained and generally inconsistent with his own findings that the claimant had mostly stable 5/10 pain." AR 24.[3] The ALJ further noted that "the October 2016 MRI showing more significant findings was dated after Dr. Bazel's assessment, and Dr. Bazel consistently indicated that the claimant could return to work within the month or by the next month, often without any listed restrictions." Id. The ALJ determined that the April 2015 opinion of consultative orthopedist Dr. H. Harlan Bleecker that Plaintiff could perform a full range of light work was entitled to "greater weight" because it was "more reasonable than Dr. Bazel's assessment due to the mostly stable symptoms over the last three years and Dr. Bleecker's orthopedic specialty and familiarity with program requirements." Id. Having carefully reviewed the record, the Court finds that the ALJ's evaluation of Dr. Bazel's opinion is not legally sufficient.

First, the ALJ improperly discounted Dr. Bazel's opinion because it was "unexplained and generally inconsistent with his own findings that [Plaintiff] had mostly stable 5/10 pain." AR 24. While "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings," Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001), Dr. Bazel's report contained some clinical and diagnostic explanation for his opinion. Dr. Bazel diagnosed Plaintiff with lumbago and radiculopathy, and noted lower back tenderness[4]

---

[3] In summarizing Dr. Bazel's opinion, the ALJ noted Dr. Bazel indicated Plaintiff would need to be absent "three times per week." AR 24. As noted, Dr. Bazel actually stated that Plaintiff would be absent about "three times a month." AR 486.

[4] Another listed objective finding handwritten by Dr. Bazel is illegible.

7

under clinical findings and objective signs. AR 485. Such findings were consistent with Dr. Bazel's progress reports, repeatedly indicating Plaintiff's range of motion for the lumbar spine revealed abnormal findings; tenderness over paraspinal area bilaterally to palpation; and a positive straight leg raise test bilaterally. See, e.g., AR 491, 494, 497, 500, 503, 506, 509, 512, 515, 518, 521, 524, 527. Further, as Plaintiff notes, Dr. Bazel's opinion was based on an ongoing treating relationship with Plaintiff, diagnostic studies, and the review of medical records from other professionals. See Garrison v. Colvin, 759 F.3d 995, 1013 (9th Cir. 2014) (concluding the ALJ erred in failing to "recognize that the opinions expressed in check-box form . . . were based on significant experience with [claimant] and supported by numerous records, and were therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit"). For instance, an x-ray taken in May 2013 showed degenerative spondylosis of the lumbar and lower thoracic spine, post traumatic Schmorl's nodes, degenerated L3 disc, and hypolordosis. AR 358. Dr. Bazel also had the benefit of the opinion of Dr. Tushar R. Doshi, Plaintiff's orthopedic treating physician. See AR 319-28, 355-60. Dr. Doshi completed a secondary treating physician orthopaedic surgical consultation follow-up report in January 2014, noting tenderness and spasm in the lumbar spine region and that straight leg raise test was positive at 70 degrees on the left sitting and supine. AR 321.

Moreover, the ALJ provides no explanation regarding how Dr. Bazel's opinion is inconsistent with Plaintiff's moderate and persistent pain level, in which Plaintiff reported his symptoms were exacerbated with work. See AR 491, 494, 497, 500. Although the ALJ's decision does not need to be drafted with "ideal clarity," the ALJ must "set forth the reasoning behind its decision in a way that allows for meaningful review." Brown-Hunter, 806 F.3d at 492. The fact that Plaintiff's medications and treatment may have provided some

relief is not inconsistent with Dr. Bazel's opinion that Plaintiff has significant limitations. See Del Toro v. Berryhill, 2019 WL 495001, at *5 (E.D. Cal. Feb. 8, 2019) ("by themselves, notations indicating that a claimant is doing well or is stable do not contradict a treating physician's opinion of a claimant's functional limitations").

The ALJ also apparently rejected Dr. Bazel's opinion because it was rendered prior to the results of an October 2016 MRI. AR 24. Although the ALJ indicated that this MRI was done in October 2016, she does not provide a citation to the administrative record, and based on a review of the record, it appears the ALJ was actually referencing an October 2015 MRI ordered by Dr. Bazel (see AR 23 (referencing an October 2015 lumbar MRI)), which showed, *inter alia*, disc degeneration at L2-L3, L4-L5, and disc desiccation at L3-L4, L4-L5, and L5-S1. See AR 489-490. As the ALJ noted, the MRI showed "more significant findings" (AR 24), which would support Dr. Bazel's opinion. The ALJ provides no explanation why Dr. Bazel's earlier opinion should be discounted merely because the MRI showing more significant findings was completed a month later.

The ALJ also accorded little weight to Dr. Bazel's opinion because he "consistently indicated that [Plaintiff] could return to work within the month or by the next month, often without any listed restrictions." AR 24. In analyzing medical opinions using state workers' compensation terminology, the ALJ "is entitled to draw inferences 'logically flowing from the evidence.'" See Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996) (citation omitted). In this case, however, the ALJ mischaracterizes Dr. Bazel's "return to work" assessments.

Dr. Bazel conducted an initial consultation on May 20, 2013. At that time, Plaintiff reported he had to stand for prolonged hours during his workday, and now suffered from shooting pain in his lower extremities and

9

numbness from his lower back to toes. Upon examination, there was tenderness and spasm over the bilateral paravertebral regions; range of motion was reduced in all directions; straight leg raise test was positive; sensation testing was abnormal in the knee, lateral calf, and lateral foot. Dr. Bazel diagnosed Plaintiff with lumbar radiculopathy and left leg numbness. He found Plaintiff temporarily totally disabled until June 30, 2013. He indicated that Plaintiff would be re-evaluated on May 28, 2013, at which time, his condition would be reassessed and further treatment recommendations given. Notably, Dr. Bazel explained that a functional capacity evaluation would be performed at the beginning of treatment for baseline disability determination and every six to eight weeks to assess for objective improvement. Plaintiff's prognosis at that time was "considered guarded." AR 399-416.

Consistent with this initial evaluation, Dr. Bazel treated Plaintiff on a regular basis for the next four years, continuously monitoring and reassessing Plaintiff's improvement and providing updated work status progress reports. On May 24, 2013, Dr. Bazel reported abnormal range of motion in the lumbar spine; tenderness over paraspinal area bilaterally to palpation; and that the straight leg raise test was positive bilaterally. Dr. Bazel opined that Plaintiff was unable to perform his usual work and was temporarily totally disabled until June 30, 2013. AR 253-54. On June 7, 2013, Dr. Bazel reported that Plaintiff's pain level was seven and eight on a ten-point scale; and his range of motion and strength had remained unchanged. At that time Dr. Bazel opined Plaintiff should remain off work until July 31, 2013. AR 258-60. At Plaintiff's August 2, 2013 examination, he rated his pain level as seven. Although he noted physical therapy and medications were helping, pain increased with standing up. Dr. Bazel noted Plaintiff's range of motion and strength remained unchanged, there was tenderness over paraspinal area bilaterally to palpation, and the straight leg raise test was positive bilaterally. Dr. Bazel instructed

Plaintiff to remain off work until September 30, 2013. AR 267-69. Over the next several visits, Dr. Bazel continued to evaluate Plaintiff's functional capacity, and consistently concluded that Plaintiff should remain off work. AR 273-99.

On September 26, 2014, Dr. Bazel found that Plaintiff could return to modified work with the following work limitations: "no prolonged standing, no prolonged walking and no prolong[ed] sitting. He is advised to restrict maximum weightlifting, pushing, pulling to 10 pounds. Maximum number of times of lifting, pushing, pulling recommended is 0-2 per hour. Maximum bending and twisting recommended is: 0-2 times/hr." AR 302. At the next visit on January 16, 2015, however, Dr. Bazel reinstated Plaintiff's off-work status, noting that no modified work was available. AR 305. Dr. Bazel continued to treat Plaintiff and extended his off-work status for the next two years. AR 306-08, 503-48. As of January 31, 2017, Dr. Bazel opined that Plaintiff was capable of returning to modified duty with the following work restrictions: no prolonged standing, no prolonged walking, no kneeling, no squatting, and no stooping. AR 502. Dr. Bazel continued these restrictions on May 7, 2017, April 14, 2017, and May 26, 2017. AR 491-99. As such, the ALJ's characterization of Dr. Bazel's progress reports is based on an inadequate discussion of the entire findings, including that Dr. Bazel continuously extended Plaintiff's off-work status and recommended several restrictions when Plaintiff was cleared to return to work.

Finally, the ALJ gave "greater weight" to the consultative orthopedist Dr. Bleecker "due to the mostly stable symptoms over the last three years and Dr. Bleecker's orthopedic specialty and familiarity with program requirements." AR 24. As noted, the ALJ does not provide any explanation regarding how Plaintiff's moderate, persistent pain is inconsistent with Dr. Bazel's assessment or translates into an ability to work in a competitive work

setting. Further, although opinions of specialists are accorded greater weight than those of general practitioners, this factor alone "does not constitute a sufficient reason for giving little weight to [the treating physician's] opinions . . . ." Mark L C. v. Berryhill, 2018 WL 5880759, at *10 (C.D. Cal. Nov. 8, 2018 (quoting Price v. Colvin, 635 F. App'x 379, 380 (9th Cir. 2016)). Thus, the fact that Dr. Bleecker is an orthopedist, while Dr. Bazel is not, does not alone constitute a sufficient reason to discount Dr. Bazel's opinion.

Accordingly, the reasons set forth by the ALJ for discounting the medical opinion of Plaintiff's treating physician, Dr. Bazel, do not constitute specific and legitimate reasons supported by substantial evidence in the record to discount Dr. Bazel's opinion.

**B. Plaintiff's Subjective Symptom Testimony**

In Issue No. 2, Plaintiff argues that the ALJ failed to properly evaluate his pain and corresponding limitations, and failed to set forth clear and convincing reasons for rejecting his asserted symptoms. Jt. Stip. at 16.

1. Applicable Law

Where a disability claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, absent evidence of malingering, the ALJ must provide "'specific, clear and convincing reasons for' rejecting the claimant's testimony regarding the severity of the claimant's symptoms." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (citation omitted); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); see also 20 C.F.R. § 404.1529(a). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude that the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885 (alteration in original) (citation omitted). "General findings are insufficient; rather, the ALJ must identify what

12

testimony is not credible and what evidence undermines the claimant's complaints." Reddick, 157 F.3d at 722 (citation omitted). However, if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

2. Analysis

On March 21, 2015, Plaintiff completed a function report in which he reported that pain in his lower back prevented him from standing more than twenty minutes, sitting more than forty-five minutes, and required him to frequently change positions. AR 212-19. He maintained that he could only lift ten pounds and pain limited his bodily movements, and affected his ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs. AR 217. He noted that he experienced involuntary muscle movements while awake and chronic neck and shoulder blade pain. AR 212. He also indicated that he could only walk ten to fifteen minutes before needing to stop and rest and needed to rest for forty-five minutes. AR 217. Plaintiff reported that he fell asleep while doing routine things during the day, used a C-Pap machine at night for sleep apnea, and his diabetes were "uncontrolled even with medication." AR 212.

During the day, Plaintiff reported doing light cooking, light upkeeping, and laundry, resting in between. AR 213. He indicated that he could maintain his personal hygiene, although he reported a limited ability to dress, bathe, and feed himself, and required reminders for personal grooming and to take his medications. AR 213-14. He also indicated that he prepared his own meals, but could not carry pots or take long cooking. AR 214. He drives, and shops twice a week for fifteen to twenty minutes. AR 215.

Plaintiff also reported memory problems; difficulty concentrating, completing tasks, and following instructions; disorientation, forgetfulness, and severe depression. AR 212, 217. According to Plaintiff, he can only pay

13

attention for two to five minutes; and he gets confused easily, requiring him "to back track." AR 217. He can count change and use a checkbook/money orders, but does not pay bills. AR 215. He watches television daily, but his condition prevents him "from going out and being with family and friends." AR 216. He reported he did not handle stress well and gets agitated. AR 218.

During the hearing, Plaintiff testified that he stands and/or walks about an hour a day. AR 57. He estimated that he could walk for approximately fifteen minutes before he would need to take a break. AR 60. He reported that he could not sit for "too long," and needs a recliner. AR 57. At meal times, he sits with one hand supported. AR 58. He testified that he drives, mops the floors once a week, cleans dishes, and does light cooking. AR 58-59. When he leaves his house, it is mostly to go shopping or attend doctor appointments. AR 60. He did not know what prevented him from exercising, commenting "[m]aybe a little depression." AR 63-64.

Plaintiff further testified that he attempted to return to work as an Uber driver, sitting for as long as forty minutes, but he could not do the job because he was in too much pain. AR 55, 58. Two to three days a week he could not work at all because of the pain. AR 61. He stated that his medications did not really help with the pain. AR 55, 61.

The ALJ determined Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but his "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 22-23. The reasons for discounting Plaintiff's allegations of pain are not entirely clear from the ALJ's decision. It appears the ALJ concluded that the record did not support the imposition of work restrictions beyond the RFC assessed because: (1) Plaintiff's symptoms had stabilized to moderate pain levels; and (2)

14

Plaintiff's subjective symptom testimony was inconsistent with the medical record. AR 23. The Court finds the ALJ failed to provide legally sufficient reasons for discrediting Plaintiff's testimony.

First, the ALJ considered that due to Plaintiff's complaints of pain, he has been treated with prescription painkillers, acupuncture treatment, shockwave therapy, a TENS unit, and epidural injections. AR 23. The ALJ noted, however, that "more recently," "it appears that [Plaintiff's] symptoms have stabilized to moderate pain levels," noting that his progress notes between 2015 through 2017 consistently indicated that "he had mostly stable 5/10 pain in his lumbar spine." Id. Contrary to the ALJ's finding, however, the administrative record reflects that Plaintiff has consistently reported significant pain levels, even with treatment. As noted, Plaintiff reported at the administrative hearing that his pain levels prevented him from returning to work as an Uber driver, his medications did not help much, he could not walk for more than fifteen minutes without taking a break, or sit for too long. Further, although the ALJ noted that Plaintiff reported moderate pain levels of 5/10, the ALJ failed to note that Plaintiff also reported that work exacerbated his symptoms. See AR 491, 494, 497, 500.

The only other articulated reason for rejecting Plaintiff's subjective symptom testimony was the lack of objective medical evidence supporting Plaintiff's complaints of pain, noting that Plaintiff's subjective symptom testimony was not entirely consistent with the medical evidence. Since the ALJ did not provide any other clear and convincing reason for discounting Plaintiff's subjective complaints, however, this finding is not a proper basis for the ALJ's determination. See Rollins, 261 F.3d at 856-57; Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (explaining that lack of objective medical evidence cannot form the sole basis for discounting pain testimony).

Accordingly, the ALJ failed to provide specific, clear and convincing reasons supported by substantial evidence to discount Plaintiff's subjective symptom testimony.

**C.     Remand for Further Proceedings**

The decision whether to remand for further proceedings is within this Court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Harman, 211 F.3d at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). A remand for further proceedings is appropriate where outstanding issues must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled and award disability benefits. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003).

Here, the Court concludes remand for further proceedings is warranted. Because it is unclear, in light of these outstanding issues, whether Plaintiff is in fact disabled, remand here is on an "open record." See Brown-Hunter, 806 F.3d at 495; Bunnell, 336 F.3d at 1115-16.

On remand, the ALJ shall reconsider the opinion of Dr. Bazel and Plaintiff's subjective complaints in a manner consistent with this opinion. If, after such reconsideration, the ALJ provides additional weight to Dr. Bazel's opinion or Plaintiff's reported subjective complaints, the ALJ shall reassess Plaintiff's RFC in light of that analysis, and thereafter proceed through the remaining steps of the disability analysis to determine what work, if any, Plaintiff is capable of performing that exists in significant numbers.

/ / /

## IV.
## ORDER

Pursuant to sentence four of 42 U.S.C. § 405(g), IT THEREFORE IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this Order.

Dated: July 03, 2019

_____
JOHN D. EARLY
United States Magistrate Judge